UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

                    Plaintiff,

v.

TAVARIS FANE,

                    Defendant.

Case No. 2:22-cr-20063-1

HONORABLE STEPHEN J. MURPHY, III

_____/

**OPINION AND ORDER DENYING MOTION TO
SUPPRESS EVIDENCE [19] AND GRANTING IN PART
AND DENYING IN PART MOTION TO SUPPRESS STATEMENTS [20]**

The Government indicted Defendant on one count of possession of a firearm as a felon in violation of 18 U.S.C. § 922(g)(1). ECF 1, PgID 1. Defendant moved to suppress certain evidence and to suppress statements allegedly obtained during a warrantless search. ECF 19; 20. The Government opposed the motions. ECF 23. For the reasons below, the Court will deny the motion to suppress evidence, ECF 19, and will grant in part and deny in part the motion to suppress statements, ECF 20.[1]

### BACKGROUND

In 2018, Defendant was convicted in Michigan state court on five counts of felony firearms and one count of assault with intent to do great bodily harm less than

---

[1] The Court will resolve the motion on the briefs without a hearing because the main issues are "entirely legal in nature"; and an evidentiary hearing is only required "if the motion is sufficiently definite, specific, detailed, and non-conjectural to enable the [C]ourt to conclude that [there are] *contested issues of fact*." *United States v. Abboud*, 438 F.3d 554, 577 (6th Cir. 2006) (emphasis in original) (quotation omitted); *see* E.D. Mich. L. Crim. R. 12.1(a); E.D. Mich. L.R. 7.1(f)(2).

1

murder or by strangulation. ECF 23, PgID 78. In 2020, the State released Defendant on parole based on several Michigan Department of Corrections (MDOC) parole release-order conditions. ECF 19-1, PgID 59–60. One condition stated that Defendant would "voluntarily consent to a search of [his] person and property upon demand by a peace officer or parole officer." *Id.* at 59. And that condition included the following disclaimer: "If I do not sign this written consent, I understand that my parole may be rescinded or revoked." *Id.* Another parole condition stated that Defendant "must not own or possess a firearm of any type, including any imitation or simulation of a firearm." *Id.* at 60.

When Defendant was on parole, his landlord sent to MDOC photos and a video of an AR-15 rifle located in Defendant's bedroom closet. ECF 23, PgID 79. Based on the photo, MDOC issued a warrant for Defendant's arrest. *Id.* When the police arrived at Defendant's home, the landlord did not know whether Defendant was on the property. ECF 19, PgID 47. Defendant's home was locked, so the police used a key to enter the residence. ECF 23, PgID 79. The police entered Defendant's bedroom and found him asleep. *Id.* The officers then arrested and handcuffed Defendant. *Id.* The officers also searched the bedroom closet and located the AR-15 rifle and two loaded magazines. *Id.* The rifle's serial number had been filed off. *Id.*

After they found the rifle, the officers asked Defendant if there were any other weapons in the bedroom. *Id.* Defendant confirmed that there was a handgun in a drawer beneath the television. *Id.* at 79–80. The officers searched the drawer and found a loaded Glock 17. *Id.* at 80. The officers secured both weapons and transported

Defendant to the Macomb Correctional Facility. *Id.* During the transport, Defendant explained that he dealt firearms as a "hustle." *Id.*

## LEGAL STANDARD

### I. Fourth Amendment

The Fourth Amendment of the United States Constitution protects against unreasonable searches and seizures. *United States v. Jones*, 565 U.S. 400, 404–05 (2012). "To determine whether a search is reasonable within the meaning of the Fourth Amendment," the Court must "examine the totality of the circumstances." *Samson v. California*, 547 U.S. 843, 848 (2006) (cleaned up).

"[S]earches and seizures inside a home without a warrant are presumptively unreasonable." *Andrews v. Hickman Cnty.*, 700 F.3d 845, 854 (6th Cir. 2012) (quotation omitted). "Thus, a warrantless search or seizure inside a home by a law enforcement officer violates the Fourth Amendment unless an exception to the warrant requirement applies." *Id.* (citation omitted). One such exception is voluntary consent: "[p]olice officers do not need a warrant to search a home when the owner consents to the search . . . freely and voluntarily." *United States v. Montgomery*, 621 F.3d 568, 571 (6th Cir. 2010) (internal quotation marks and citations omitted).

### II. *Miranda* Warnings

Under the Fifth Amendment, an individual may not be "compelled in any criminal case to be a witness against himself." To protect that right, police officers must give warnings, including the right to remain silent, before engaging in "custodial interrogation." *United States v. Panak*, 552 F.3d 462, 465 (6th Cir. 2009);

*Miranda v. Arizona*, 384 U.S. 436, 478–79 (1966). A person is in "custody" if "there was a formal arrest or restraint on freedom of movement of the degree associated with formal arrest." *Stansbury v. California*, 511 U.S. 318, 322 (1994) (per curiam) (cleaned up). A person is under "interrogation" when "any words or actions on the part of the police" are those which "the police should know are reasonably likely to elicit an incriminating response." *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980). Defendant bears the burden to show that a police interview was a custodial interrogation. *United States v. Smith*, 783 F.2d 648, 650 (6th Cir. 1986).

## DISCUSSION

The Court will first resolve Defendant's motion to suppress evidence, ECF 19. After, the Court will resolve the motion to suppress statements, ECF 20.

I. <u>Motion to Suppress Evidence</u>

Defendant argued that the officers' search of his bedroom was unconstitutional because he was coerced into waiving his Fourth Amendment rights as a condition of parole. ECF 19, PgID 49–54. Binding precedent counsels against that conclusion.

The touchstone of the Fourth Amendment is reasonableness, and the reasonableness of a search "is determined by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed to promote legitimate governmental interests." *United States v. Knights*, 534 U.S. 112, 118–19 (2001) (citation omitted). A person's "status as a probationer subject to a search condition informs both sides of that balance" because "[p]robation is one point on a continuum of possible punishments ranging from

4

solitary confinement in a maximum-security facility to a few hours of mandatory community service." *Id.* at 119 (cleaned up). And although Defendant was on parole—not probation—during the search, "parolees have *fewer* expectations of privacy than probationers." *Samson*, 547 U.S. at 850 (emphasis added). Indeed, "[t]he essence of parole is release from prison, before the completion of sentence, on the condition that the prisoner abide by certain rules during the balance of the sentence." *Id.* (quotation omitted).

Put simply, the warrantless search of Defendant's home bore no significant degree of intrusion on his privacy because of his limited expectation of privacy while he was on parole. For one, the "consent to search . . . upon demand" condition of his parole, ECF 19-1, PgID 59, "was clearly expressed to [Defendant]." *Samson*, 547 U.S. at 852 (internal quotation marks and quotation omitted). For two, Defendant signed the parole conditions order and was therefore "unambiguously aware of it." *Samson*, 547 U.S. at 852 (internal quotation marks and quotation omitted); ECF 19-1, PgID 59–60. Thus, the "acceptance of a clear and unambiguous search condition significantly diminished [Defendant's] reasonable expectation of privacy." *Samson*, 547 U.S. at 852 (internal quotation marks and quotation omitted). Based on the totality of the circumstances relating to Defendant's parolee status, a status that is "an established variation on imprisonment, including the plain terms of the parole search condition," Defendant had no "expectation of privacy that society would recognize as legitimate." *Id.* (cleaned up).

Turning to the Government's interest, "a State has an overwhelming interest in supervising parolees because parolees are more likely to commit future criminal offenses." *Id.* at 853 (cleaned up). And "[w]hen an officer has reasonable suspicion that a probationer subject to a search condition is engaged in criminal activity, there is enough likelihood that criminal conduct is occurring that an intrusion on the probationer's significantly diminished privacy interests is reasonable." *Id.* at 849–50.

Here, "[Defendant's] landlord reported to MDOC that [Defendant] kept an AR-15 rifle in his bedroom closet." ECF 23, PgID 91. And the landlord sent pictures and a video of a firearm to MDOC. *Id.* (noting that "MDOC officers had no reason to doubt the homeowner's allegation") (citation omitted). When the officers searched Defendant's bedroom for firearms after receiving the landlord's photographic tip, they had at least a reasonable suspicion that Defendant had violated his parole conditions or committed a crime. *See id.* Together, the parole condition and the officers' reasonable suspicion that Defendant had committed a crime show that the search was reasonable under the Fourth Amendment.[2] The Court will therefore deny the motion to suppress evidence derived from the search, ECF 19.

II.     Motion to Suppress Statements

In Defendant's motion to suppress statements, he claimed the officer should have advised him of his *Miranda* rights and that his "parole status [did] not deprive

---

[2] As in *Samson*, the Court's finding is based on reasonableness under the "general Fourth Amendment approach." 547 U.S. 852 n.3. Thus, the Court need not decide here whether Defendant's acceptance of the parole search condition created valid consent such that he waived his Fourth Amendment rights.

6

him of protections under *Miranda*." ECF 20, PgID 69. The Court will first discuss why one of Defendant's statements should be suppressed. The Court will then explain why the physical evidence obtained because of his statement should not be suppressed.

    *A.    Statements*

At issue are two statements: (1) Defendant's affirmative answer to the officer about whether "there were any other weapons" in Defendant's home; and (2) the statement Defendant made during transport that he dealt firearms as a "hustle." ECF 23, PgID 79–80.

The first statement should be suppressed. Under *Miranda*, the officers were required to advise Defendant of his rights if he faced a custodial interrogation. *See* 384 U.S. at 478–79. Neither party disputed that Defendant was interrogated: he was asked a question by an officer that was "reasonably likely to elicit an incriminating response." *Innis*, 446 U.S. at 303; *see* ECF 20, PgID 67–68; ECF 23, PgID 95. The issue thus turns on whether Defendant was in custody.

In the Sixth Circuit, courts examine the totality of circumstances to decide whether a person was in custody for purposes of *Miranda*. *United States v. Swanson*, 341 F.3d 524, 529 (6th Cir. 2003). They also consider several factors: (1) "whether a reasonable person in the defendant's position would feel free to leave"; (2) "the purpose of the questioning"; (3) "whether the place of the questioning was hostile or coercive"; (4) "the length of the questioning"; and (5) "other indicia of custody." *Id.*

7

Put simply, no reasonable person in Defendant's position would have felt free to leave. The officers entered Defendant's home while he was asleep and handcuffed Defendant right after they woke him. ECF 20, PgID 67; ECF 20-1, PgID 72. After Defendant was handcuffed, the officers began searching his bedroom for firearms. ECF 20, PgID 67. Defendant was also outnumbered by the officers in his room. *See* ECF 20-1, PgID 72. Although it is unclear whether Defendant was formally arrested when he was handcuffed, Defendant's freedom of movement was restrained to the degree associated with a formal arrest. *See* ECF 20, PgID 67; ECF 20-1, PgID 72. Defendant was thus under a custodial interrogation when the officer asked him "if there were any other weapons." ECF 23, PgID 79.

In the face of those facts, the Government argued that under *Minnesota v. Murphy*, 465 U.S. 420 (1984), the officers did not need to give Defendant *Miranda* warnings when they asked him about the location of firearms because possessing firearms violated one of his parole conditions. ECF 23, PgID 93–94. But in *Murphy*, the Supreme Court held that the defendant "was not in custody for purposes of receiving *Miranda* protection since there was no formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." 465 U.S. at 430–31 (internal quotation marks and quotation omitted). Indeed, the defendant had voluntarily arranged to meet with his probation officer, and he incriminated himself at that meeting. *Id.* at 423–24. In contrast, Defendant here was in custody at the time he was questioned. *See* ECF 20, PgID 67. Because the *Murphy* facts are distinguishable, its holding is inapplicable. In sum, Defendant was never Mirandized,

8

so his statement identifying the location of the second firearm must be suppressed. *See Panak*, 552 F.3d at 465.

Defendant's second statement is admissible. In the motion, Defendant did not address his admission about his gun-dealing "hustle" while being transported to prison. *See* ECF 20, PgID 64–70. But in the memorandum attached to Defendant's motion, one of the officers present during the search explained that "[d]uring the transport[, Defendant] offered the *unprovoked* statement that his 'hustle' was dealing guns." ECF 20-1, PgID 72 (emphasis added). Defendant was in custody during transport, but nothing in Defendant's motion suggested that he was being interrogated when he made the statement. *See* ECF 20, PgID 64–70; ECF 20-1, PgID 72; *see also Miranda*, 384 U.S. at 478–79. As a result, the officers were not required to give Defendant *Miranda* warnings, and the statement about dealing guns is admissible.

### B. Physical Evidence

Defendant mentioned, in a single sentence, that "the physical evidence obtained as a result of [the] statements" should also be suppressed. ECF 20, PgID 70; *see also id.* at 62. Defendant's argument appeared to rely on the fruit of the poisonous tree doctrine. *See id.* at 70. But "the fruit of the poisonous tree doctrine does not apply to physical evidence seized as a result of a *Miranda* violation." *United States v. Stark*, No. 09-cr-20317, 2009 WL 3672103, at *3 (E.D. Mich. Nov. 2, 2009) (Murphy, J.) (collecting cases). Indeed, "[t]he Self-incrimination Clause [] is not implicated by the admission into evidence of the physical fruit of a voluntary statement." *United States*

9

*v. Patane*, 542 U.S. 630, 636–37 (2004). "As long as the unwarned statement was voluntary under the Fifth Amendment, the fruits of the statement are admissible." *United States v. Hemphill*, No. 1:10-CR-053, 2010 WL 3366137, at *6 (S.D. Ohio Aug. 20, 2010) (internal quotation marks and quotation omitted) (collecting cases).

A statement is made voluntarily unless the totality of the circumstances suggest that "a defendant's will was overborne in a particular case." *United States v. Craft*, 495 F.3d 259, 263 (6th Cir. 2007). The Sixth Circuit "has established three requirements for a finding that a confession was involuntary due to police coercion: (i) the police activity was objectively coercive; (ii) the coercion in question was sufficient to overbear the defendant's will; and (iii) the alleged police misconduct was the crucial motivating factor in the defendant's decision to offer the statement." *United States v. Mahan*, 190 F.3d 416, 422 (6th Cir. 1999).

After Defendant told the officers about the firearm in the drawer beneath the television, the officers found a loaded Glock 17. ECF 21, PgID 79–80. The firearm is physical, non-testimonial evidence. Thus, even though the physical evidence was discovered after a *Miranda* violation, the weapon cannot be suppressed under the fruit of the poisonous tree doctrine if Defendant's statement was made voluntarily. *See Hemphill*, 2010 WL 3366137, at *6 (collecting cases).

Nothing in the motion suggested that Defendant's will was overborne by the officers; indeed, Defendant never lodged such an argument. *See* ECF 20, PgID 64–70. The coercive factors present during the search were that he was handcuffed, there were at least two officers present in his bedroom, and he was not advised of his rights.

10

ECF 20, PgID 64; ECF 20-1, PgID 72; *see Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973) (collecting cases). Although those factors "suggest[] a somewhat coercive environment," they do not establish that the officers' "behavior was so coercive as to overbear [Defendant's] will." *Hemphill*, 2010 WL 3366137, at *7. For one, handcuffing does not "constitute sufficient coercion to warrant suppression." *Id.* (quotation omitted). For another, unwarned statements do not require a finding of involuntariness. *United States v. Crowder*, 62 F.3d 782, 788 (6th Cir. 1995).

Considering the totality of the circumstances, the coercive factors did not render Defendant's statement involuntary. For instance, the evidence suggests that the questioning was extremely short—the officer asked only one question: "if there were any other weapons." ECF 20, PgID 65. And nothing in the motion shows that the on-scene officers threatened Defendant, withheld food, drink, or sleep from Defendant, or employed "psychological tactics to coerce [Defendant] to talk." *Hemphill*, 2010 WL 3366137, at *8. Instead, the interrogation appears to have been brief, civil, and minimally coercive. *See* ECF 20, PgID 64; ECF 20-1, PgID 72; ECF 23, PgID 79–80. Defendant thus made his statement voluntarily, and the physical evidence derived from it is admissible.

In sum, Defendant's statement about the location of the second firearm was obtained in violation of *Miranda* and must be suppressed. But the statement about Defendant's "hustle" and the physical evidence derived from Defendant's unwarned statement are admissible and will not be suppressed. The Court will therefore grant in part and deny in part the motion to suppress statements, ECF 20.

## ORDER

**WHEREFORE**, it is hereby **ORDERED** that the motion to suppress evidence [19] is **DENIED**.

**IT IS FURTHER ORDERED** that the motion to suppress statements [20] is **GRANTED IN PART AND DENIED IN PART**.

**SO ORDERED.**

s/ Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated: October 25, 2022

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on October 25, 2022, by electronic and/or ordinary mail.

s/ David P. Parker
Case Manager
